Johnson and Wife *v.* Murray.

WILLIAM JOHNSON and WIFE *v.* ROBERT MURRAY *et al.*

1. CHANCERY PLEADINGS AND PRACTICE. *Partition of land. Chancery jurisdiction.* Under the Code, sec. 4321, the court of chancery may make partition of land although the answer show the title to be in dispute, if no objection is made to the jurisdiction of the court in the mode prescribed.

2. SAME. *Same. Evidence.* After a decree ordering a partition upon an adjudication of the rights of the parties in the land, it is error to look to evidence or petition afterwards filed by the defendants except in so far as they may effect the rights of the defendants. The complainants would be entitled to the allotment of their shares as decreed, but the defendants might show by proof or agreement among themselves that the residue of the land should be left in common.

3. SAME. *Answers and petitions should be signed by parties.* Neither answers nor petitions should be allowed to be filed unless signed by the parties.

4. SAME. *Partition of land.* A decree for partition is erroneous which orders a partition of land into as many shares as there were originally tenants in common, when the joint answer of the defendants shows that their shares have been changed by conveyance. The partition should either be refused until the interests of the defendants were ascertained, or limited to the shares of complainants.

5. SAME. *Same. Death of tenant in common at time of decree. Revivor.* The death of a tenant in common at the date of a decree for partition will not invalidate the decree if the heir, brought in by *scire facias,* answer the bill, and make no objection to the decree, and acquiesce in the partition.

FEOM KNOX.

Appeal from the Chancery Court at Knoxville. W. B. STALEY, Ch.

JAMES COMFORT for complainant.

J. C. J. WILLIAMS and J. W. SNEED for defendant.

COOPER, J., delivered the opinion of the court.

Bill for partition filed September 6, 1875. It states that James D. Murray died intestate, leaving a widow and eight children, one of whom is Melinda, the wife of Wm. Johnson; that he died seized and possessed of two tracts of land, one of 136 acres, known as the home place, the other of 115 acres, known as the Ridge tract; that the widow was entitled to her dower in the whole land, and each of the seven children then living and the assignee of a child who had died were vested with an undivided one-eighth interest in the land subject to the dower. The widow, the other children, and the assignee were made defendants. The prayer was that the widow's dower be allotted to her, and the lands partitioned among the tenants-in-common according to their respective interests, or sold for partition. Process was duly served upon all the defendants, and a joint an-

swer was filed by counsel in the name of all of them. This answer admits the death of James D. Murray intestate, as alleged, leaving a widow and children, and seized of two tracts of land, and that the complainants and defendants were entitled to the interests in the land specified. The answer then states that an agreement was entered into between the adult heirs, all of whom were of age except the complainant, Melinda, who was then unmarried, that "upon certain transfers" by three of the heirs, naming them, and "complainant, Melinda, after she came of age," to defendants, James Murray and William May and wife Bettie, formerly Bettie Murray, they, the said James Murray and William May and wife, should take the Ridge place, and release their interest in the home farm to the widow and other heirs, except that Bettie May retained one-half of her interest in the home place. It was further agreed that the widow should take the rent and profit of the home place during her natural life. This arrangement, the answer says, was acted upon with the knowledge and consent of complainant, Melinda, but she had intermarried with her co-complainant, and they now repudiate this plan of adjustment, and claim their "proper distributive share" of said lands subject to the widow's dower. The widow then says, in the answer that upon the faith of the arrangement stated by which she was to have the rents and profits of the home place, she released her claim to a child's part of the personal estate of her late husband, and that the complainants and other tenants-in-common of

the land have now entered into an agreement in writing, which is made an exhibit to the answer. By this instrument it was agreed, she says, that her dower in the whole land should be allotted to her ,in the home place, and so much more of said land for life as would be equivalent to her interest in the personal estate, and she asks that her interest in the personal estate be therefore ascertained, and to this end that the master be required to hear proof and report upon the same. The " Respondents unite with complainants in the desire to have these several matters fully and finally settled by such interlocutory orders and decrees as will effectually accomplish the settlement of all the rights involved upon the basis of the exhibit to the answer."

The exhibit purports to be signed by the complainants and defendants, and is thus worded: " We the heirs-at-law of James D. Murray, deceased, agree that the dower rights of the widow, Rebecca Murray, in all the lands of which Jas. D. Murray died seized shall be ascertained and allotted to her in the home place, that is to say, the value of it, including the value of the personal estate to which she was en-entitled as widow, and which she surrendered for the benefit of the estate. Said dower shall be surveyed and allotted to her, and the residue of the home tract be divided between the heirs-at-law according to their respective rights."

On April 4, 1879, a decree was rendered reciting that the cause came to be heard upon the bill of complaint and the answer of defendants, naming them,

and declaring that complainants and defendants were equal owners and tenants-in-common of the two tracts of land described in the bill, each owning an undivided one-eighth of said land, and that the defendant, Rebecca Murray, was entitled to dower in said land, and that complainants were entitled to a partition of said land as prayed; it was therefore ordered, adjudged and decreed that the prayer of complainants be granted, and a writ of partition awarded. The decree then appoints commissioners "to lay off said dower and make said partition," with directions to report their action. Then follows the following clause: "And it appearing that in the answer application is made for relief against complainant touching matters not affected by this decree, and the counsel of respondents not being present on the hearing of the cause, it is agreed by complainants that the matters be reserved for a future hearing, and continued until the next term of this court."

On August 30, 1879, the commissioners filed their report with an accompanying plat, showing the allotment of dower in the home place, and a partition of the residue of that tract of land, and the whole of the Ridge tract, into eight shares, and an allotment of one share in each tract to the complainants and defendants as directed. The defendants filed exceptions to the report, but the exceptions, it is conceded, merely undertake to attack the decree, and neither find fault with the allotments as made, nor deny that it conforms to the requirements of the decree. They were not noticed by the chancellor or

the Referees, and were of no avail for any purpose: *Musgrove* v. *Lusk,* 2 Tenn. Ch., 576 ; *Myers* v. *James,* 4 Lea, 370.

On July 11, 1881, the defendants filed in the cause two deeds. One of these deeds bears date March 28, 1873, and purports to be a conveyance by Melinda Murray, as a *feme sole,* and three of her sisters with their husbands, reciting a consideration of $600 paid, to William May and Charlotte E., his wife, of seventy-one acres of the Ridge tract by metes and bounds. The execution of this deed is acknowledged by complainant, Melinda, on March 20, 1874, and registered on the 17th of the following September. The other deed is dated December 20, 1880, and purports to be a quit-claim to May and wife of the same seventy-one acres by the other four heirs and the widow of the intestate. On February 24, 1882, a petition was filed in the cause in the name of May and wife, but sworn to alone by a person signing himself as agent and counsel, seeking to go behind the decree of April 4, 1879. On March 1, 1882, the chancellor permitted this petition to be withdrawn, over the objection of the complainants, and another petition to be filed in the name of May and wife, signed and sworn to as the first petition had been. This petition also seeks to get behind the decree. These petitions state that the answer in the cause was filed by counsel upon a retainer by one of the heirs, and that petitioners did not know that the complainants set up a claim to the Ridge tract until the commissioners came up to divide it, and that the complainant

Johnson and Wife *v.* Murray.

Melinda had previously, by the deed of March 28, 1873, conveyed her interest in the Ridge tract to petitioners. The petition which was permitted to be withdrawn stated further, that the boundaries set out in the deeds for the seventy-one acres covered only about one-half of the Ridge tract, supposed to contain four of the shares. That the petitioner, Bettie May, owned one share, and that the other shares were transferred to James D. Murray, one of the respondents. The petition also stated that the petitioners had therefor conveyed to the complainant, Melinda Johnson, their one-half interest, as heirs of Jas. D. Murray, in and to the lower tract of land, "and they now relinquish to her said interest."

On July 2, 1881, the death of Mary Porter, one of the defendants and heirs, was suggested by the defendant and proved, and a *scire facias* ordered to issue for her children and heirs  The process was issued and served, and the guardian of the minor heirs filed an answer for his wards, and one of these heirs, who was of age, filed a separate answer. These answers did not undertake to show any cause why the suit should not be revived, but proceeded to answer the original bill, and denied that the interest of the parties in the land was correctly set forth, and admitted that Mary Porter had conveyed her interest in the Ridge tract to May and wife. The guardian in his answer states also that Mary Porter died on March 1, 1878.

On March 7, 1882, the chancellor heard the cause and confirmed the report allotting to the widow her dower, but dismissed the bill in other respects with-

out. prejudice, because, he says, in view of the facts contained in the petition of May and wife, and the two deeds filed as above, he could not confirm the report without doing injustice. Both parties prayed an appeal, but the complainants alone perfected the appeal.. The Referees have reported in favor of affirming the decree upon the ground that the answer shows the title of the land to be in dispute, and that the court of chancery at the time of the filing of the bill had no jurisdiction in such a case. The exceptions to the report open all the issues.

The report of the Referees cannot be sustained for the reason that no objection to the jurisdiction of the court was made by the defendants as the statute requires, even if it be conceded that a court of chancery could not under the Code settle title, upon a mere bill for partition, preliminary to granting the relief: Code, sec. 4321; *Leverton* v. *Waters*, 7 Cold., 20. The chancellor's ground for dismissing the bill is equally untenable, for it is based upon a petition insufficient both in form and substance to impeach his former decree, and upon evidence which could not be filed, and ought not to have been looked to for any such purpose. The petition and deeds were not admissible evidence at all as against the complainants. They might be introduced, by the consent of the defendants, to explain their own relative rights *inter sese.* But the same end could have been obtained by mutual consent. among themselves without resorting to the course adopted. The difficulties in this cause, it may be added, have grown out of the loose

practice, which ought never to be sanctioned, of permitting an answer to be filed without the signature of parties. The practice is equally objectionable of permitting petitions to be filed, signed and sworn to by agents and solicitors instead of by the parties themselves. The chancellor must have allowed the first petition purporting to be by May and wife, to be withdrawn because it was not authenticated by, and therefore not binding upon them. But for this very reason neither petition ought to have been received.

The supposed danger of doing injustice in the present state of the record has no doubt induced both the chancellor and the Referees to dismiss the bill without prejudice. Such a danger, if real, ought undoubtedly to induce the closest scrutiny into the proceedings, for the courts should, if possible, avoid the semblance of wrong.

The complainants and defendants were interested in the two tracts of land in controversy precisely as set out in the bill, the living children of Jas. D. Murray, and the assignee of a deceased child owning each an undivided eighth interest in the land subject to the widow's right of dower. This is averred in the bill, and expressly admitted in the answer. But the answer sets up an agreement among the heirs at a time when all of them were adult except the complainant, and which was to be executed by her when she came of age, to the effect that upon the transfer to James Murray and May of certain shares in the Ridge tract they were to release a certain por-

tion of their interest in the home place to the widow and other heirs, and the widow was to have the use of the home place for life, she releasing her share of the personal estate. The complainants repudiated this agreement after their intermarriage, and by the filing of the bill for partition. The fact is in effect conceded by the answer, and if we look to the petition of May and wife, by its silence on the point. And if, as the answer says, the consideration of the conveyance of Melinda was the release of part of the interest of Jas. Murray and May and wife in the home place in favor of the widow and other heirs, the complainants were justified in repudiating it, because it was probably not a fair bargain for the then infant complainant, and because, so far as appears, no release was ever executed. After the repudiation the complainants seem to have signed the agreement made an exhibit to the answer, although the statements of the answer on this subject are in avoidance of the averments of the bill, and not proven. The agreement itself is moreover not binding on the married women who signed it, nor of course upon any of the tenants-in-common as between themselves, whatever may be the widow's rights as against any of the signers: *Douglass* v. *Harrison,* 2 Sneed, 382. In this view, the complainants were entitled to their undivided eighth share of each tract of land, and to have it allotted to them, after setting apart the widow's dower. To this extent the equity of the bill and the rights of the complainants seem to be free from doubt.

The decree of April 4, 1879, is, however, ob-

viously erroneous.   For upon an answer of defendants, which stated a valid agreement between themselves in relation to the land, which changed the relative proportions of their previous holdings, the court has, nevertheless, ordered the land to be divided as if there were no such agreement.   The matter was in avoidance as to the complainants, and, in the absence of proof, they had a right to have their shares set apart to them in severalty, and an allotment of the widow's dower, but they could not ask, and the court erred in decreeing a partition of the residue of the land into equal shares.   As between the defendants the answer was an admission of their relative rights, and should be taken as true, and the court should have either refused to make the partition until the several interests of the defendants were ascertained, or limited the partition to the allotment of the widow's dower and the shares of the complainants, leaving the residue of the land in common :   Code, sec. 3278. The latter course was the proper one where the defendants unnecessarily delayed the showing of their respective titles.   The same end may now be attained by confirming the allotment and partition to the extent indicated.

The decree of April 4, 1877, is also erroneous in splitting up the action and directing a partition upon one basis and reserving certain matters of relief which if sustained would have changed the allotment of land to the widow as to some of the defendants.   There ought, we have repeatedly said, to .be only one hearing on the merits.   But this error may also be treated

as condoned by the widow, who alone asked for an account of her share of the personalty and the execution of the exhibited agreement. For she has ac quiesced in the allotment made, and has not appealed from the final decree.

It is suggested in the answer of the guardian of the Porter children that Mary Porter, [one of the heirs, died before the rendition of the decree of April 4, 1879, and the cause was not revived against her children until afterwards, and not formally revived at any time. The date of the death is not proven, and therefore the fact cannot be looked to in the present disposition of the cause. But if Mary Porter was in fact dead when the decree was rendered, the decree under our decisions might be set aside for that cause alone upon a bill filed for the purpose: *Morrison* v. *Deaderick*, 10 Hum., 342. I have myself never been able to concur in the reasoning upon which these decisions are made to rest, but they have been heretofore adhered to. But even this error may be considered as cured by the bringing of the heirs before the court, and their filing of answers to the merits, raising no objection to the confirmation of the report of partition, and not appealing.

Under these circumstances we think the ends of justice will be best attained by confirming the allotment of the widow's dower, and of the partition so far as it sets apart to the complainants their separate allotments in the two tracts of land, and leaving the residue of the land in common without prejudice to the rights of the defendants.

The report of the Referees will, therefore, be se aside, and the decree of the chancellor reversed except in so far as it confirms the widow's allotment of dower. And a decree will be entered here confirming the report of the Referees as to the shares of the complainants, setting aside the report as to the other shares, and leaving the rights of the defendants in the residue of the land unimpaired. The complainants and defendants will each pay the costs of the court below as directed by the chancellor, but the complainants will recover of the other tenants-in-common, defendants, the costs of this court.